UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JERMAINE SCOTT,<br>*Plaintiff,* | : | Case No. 3:25-CV-1117 (SVN) |
| | : | |
| v. | : | |
| | : | |
| JESUS GUADARRAMA, *et al.*,<br>*Defendants*. | : | December 29, 2025 |

## INITIAL REVIEW ORDER

*Pro se* plaintiff Jermaine Scott, a sentenced[1] inmate currently incarcerated at Cheshire Correctional Institution, filed this action pursuant to 42 U.S.C. § 1983. He names seven defendants: Warden Jesus Guadarrama and six John Doe prison officials. He brings two claims under the Fourteenth Amendment, alleging that (1) prison officials failed to protect him from an inmate attack and (2) later failed to provide medical treatment to him after the attack. Plaintiff sues Defendants in their individual and official capacities and seeks damages, declaratory relief, and the appointment of counsel.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

---

[1] Information on the Department of Correction website shows that Plaintiff was sentenced on November 12, 2024, to a term of imprisonment of 55 years. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=409196 (last visited December 29, 2025). The Court may take judicial notice of matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-CV-1425 (KAD), 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2]  Based on this initial review, the Court orders as follows.

## I. FACTUAL BACKGROUND

The Court does not include herein all the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

Plaintiff was previously incarcerated at MacDougall-Walker Correctional Institution ("MacDougall"). Compl., ECF No. 1 ¶ 6. While there in May of 2024, MacDougall officials placed Plaintiff in a transport van to take him to court. *Id.* Correctional officers John Doe 1 and John Doe 2 supervised the transport, and John Doe 3, a "Population Management Official," approved the transport. *Id.* ¶¶ 5, 6.

The van's driver picked up additional inmates en route to court. *Id.* ¶ 7. Inmates Laron Webster and Michael James entered the van. *Id.* ¶ 8. Plaintiff had previous altercations with these inmates, and prison officials had "keep separate profiles" between Plaintiff and these inmates. *Id.* After arriving at Bridgeport Correctional Center, all three inmates were directed to the same bullpen despite their "keep separate profiles." *Id.* ¶ 9. Webster began removing his jumpsuit when Plaintiff entered the bullpen. *Id.* ¶ 10. Webster told Plaintiff that he was still upset with Plaintiff about a physical altercation between them that occurred three months earlier at MacDougall. *Id.*

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only " 'labels and conclusions,' " " 'a formulaic recitation of the elements of a cause of action' " or " 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Plaintiff unsuccessfully attempted to deescalate the confrontation with Webster. *Id.* ¶ 11. Webster assaulted Plaintiff, and Plaintiff defended himself. *Id.* Correctional officers then ran into the bullpen and deployed a chemical agent. *Id.* ¶ 12. Officers placed Plaintiff in administrative segregation pending his transfer back to MacDougall. *Id.* ¶ 13. Prison officials later transported Plaintiff to MacDougall, where officials placed Plaintiff in the restrictive housing unit after giving Plaintiff a disciplinary report for fighting with Webster. *Id.* ¶ 14.

Plaintiff awoke the next morning with "severe back pains" from being "slammed" on his back during his altercation with Webster. *Id.* ¶ 15. The disciplinary officer told Plaintiff, "although you had a profile and you were defending yourself, you still can't beat the ticket because a fight still happened. If you don't plead guilty to the ticket, they're going to smoke you in a hearing." *Id.* Plaintiff pleaded guilty to the disciplinary report and received a sanction of five days' segregation. *Id.* ¶ 16. While there, Plaintiff stopped correctional officers touring the unit to inform them of his back pain. *Id.* ¶ 17. The officers told Plaintiff they had called medical staff, but medical staff never came the entire time Plaintiff was in segregation. *Id.* ¶¶ 17–18.

Plaintiff returned to the general population after five days in segregation. *Id.* ¶ 19. Plaintiff immediately requested medical attention through a written request. *Id.* Plaintiff then filed a grievance regarding prison officials' failure to protect him from Webster and their failure to provide medical care after the altercation. *See id.* ¶ 20. Warden Guadarrama responded to the grievance by "blatantly repudiat[ing] and disregard[ing] any staff misconduct and the clear disregard for the Plaintiff's safety." *Id.* Plaintiff had difficulties getting out of bed and was "unable to engage in his normal daily activities for a substantial amount of time" because of his injuries. *Id.* ¶ 21. Medical staff finally saw Plaintiff "after a plethora of time elapsed." *Id.* Medical staff gave Plaintiff Tylenol and never saw him again. *Id.*

## II.     DISCUSSION

### A. Official Capacity Claims

Plaintiff asserts his claims against Defendants in their official and individual capacities. Compl. ¶ 5. To the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See*, *e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

The Court also dismisses Plaintiff's request for declaratory relief. *See* Compl. at 4. "[I]f Plaintiff were to prevail on any constitutional claim proceeding in this action, a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights." *Petion v. Pearson*, No. 3:22-CV-1647 (OAW), 2023 WL 6050054, at *4 (D. Conn. Sept. 15, 2023). Thus, dismissal of Plaintiff's declaratory judgment request is warranted because the declaratory relief Plaintiff seeks is duplicative of his other causes of action. *See id.*

Because Plaintiff's official capacity claims for damages and his claim for declaratory relief are dismissed, the Court considers only whether Plaintiff has sufficiently alleged claims against any defendant in his or her individual capacity for damages.

### B. Failure to Protect Claims

Plaintiff first alleges that correctional officers John Does 1, 2, and 3 failed to protect Plaintiff from Webster attacking him. Compl. ¶ 23. Plaintiff was a pretrial detainee when Webster attacked him in May of 2024. *See id.* ¶¶ 6, 11; note 1, *supra*. Because Plaintiff was a pretrial detainee and not a convicted prisoner at the time of the alleged assault, his failure to protect claim is asserted pursuant to the Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Cook v. Connecticut*, No. 3:24-CV-01914 (VDO), 2025 WL 606958, at *2 (D. Conn. Feb. 25, 2025).

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Walker v. Schult*, 717 F.3d 119, 128 (2d Cir. 2013) (alterations in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (cleaned up)).  But not every injury suffered by one inmate at the hands of another imposes constitutional liability on those officials responsible for the victim's safety.  *Farmer*, 511 U.S. at 834.  "Failing to protect a pretrial detainee from assault rises to the level of a constitutional violation of the Fourteenth Amendment only where an official acted with 'deliberate indifference to a substantial risk of serious harm' to the detainee."  *Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 405 (E.D.N.Y. 2023) (quoting *Farmer*, 511 U.S. at 836).

A Fourteenth Amendment deliberate indifference claim based on an official's failure to protect a detainee has two prongs.  *Little v. Cnty. of Nassau*, 708 F. Supp. 3d 252, 263 (E.D.N.Y. 2023).  First, the plaintiff must show that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  "In assessing whether the risk of an inmate's violence against other inmates is 'sufficiently serious' to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'"  *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997), *aff'd sub nom. Heisler v. Rockland Cnty.*, 164 F.3d 618 (2d Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "District courts in the Second Circuit have pointed to the existence, or lack thereof, of no-contact orders as indications that a substantial risk of harm may exist."  *Mays v. Falu*, No. 18-CV-6145 (KMK), 2019 WL 6619330, at *8 (S.D.N.Y. Dec. 5, 2019) (collecting cases); *Little*, 708 F. Supp. 3d at 264 ("Courts may find a substantial risk of serious harm where there is evidence of a previous altercation between a plaintiff and his attacker, coupled with a complaint by the

5

plaintiff regarding the altercation or a request by the plaintiff to be separated from the attacker." (internal quotation marks omitted)).

Second, there is a subjective prong:  the plaintiff must show "'that the officer acted with at least deliberate indifference to the challenged conditions.'"  *Id.*  (quoting *Darnell*, 849 F.3d at 29).  "[I]n in the context of the Fourteenth Amendment," the subjective prong requires the defendant to have "acted intentionally to impose the alleged condition, or [to have] recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Sanchez*, 662 F. Supp. 3d at 406 (quoting *Darnell*, 849 F.3d at 35).

Plaintiff alleges there was a "keep separate profile[]" between Plaintiff and Webster.  Compl. ¶¶ 8, 15.  This allegation sufficiently establishes that "a substantial risk of harm may exist," in satisfaction of the first prong.  *See Mays*, 2019 WL 6619330, at *8; *Little*, 708 F. Supp. 3d at 264.  As to the second prong, Plaintiff does not allege that any defendant "acted intentionally to impose the alleged condition," but his allegation that prison officials placed him in a bullpen with an inmate officials knew to "keep separate" from Plaintiff is sufficient, at this early stage, to show that officials "knew, or should have known, that the condition posed an excessive risk to health or safety."  Compl. ¶¶ 8, 15; *Sanchez*, 662 F. Supp. 3d at 406 (quoting *Darnell*, 849 F.3d at 35); *see also Early v. Quiros*, No. 3:24-CV-219 (SVN), 2024 WL 3360648, at *5 (D. Conn. July 10, 2024) (subjective element satisfied by allegations that prison official knew of danger to plaintiff posed by particular inmate but ignored that risk by letting that inmate move into plaintiff's block and tier).  Because Plaintiff's allegations satisfy both elements, his Fourteenth Amendment failure to protect claim may proceed.

This claim may not proceed, however, against all named Defendants. A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal citation omitted)). This is true with respect to supervisory officials, as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

For purposes of initial review, the Court determines that Officers John Does 1 and 2 were personally involved because they "arranged and supervised" the transport that resulted in Webster assaulting Plaintiff. Compl. ¶ 6. Likewise, for purposes of initial review, the Court also considers John Doe 3 personally involved because the court infers his knowledge of the "keep separate orders" as part of his responsibilities for "approv[ing]" the transport of Plaintiff and Webster. *Id*. And because Warden Guadarrama purportedly responded to Plaintiff's grievance about the incident, *id.* ¶ 20, this act is sufficient to establish his personal involvement at this stage. *See Jordan v. Gallagher*, No. 3:24-CV-1694 (VAB), 2025 WL 950730, at *6 (D. Conn. Mar. 28, 2025) (noting that if "a supervisory prison official receives a particular grievance, personally reviews it, and responds and/or takes action in response, such conduct may constitute sufficient 'personal involvement' to establish individual liability for the alleged constitutional violation." (quoting *Young v. Choinski*, 15 F. Supp. 3d 172, 191–92 (D. Conn. 2014))).

The Court cannot infer from the allegations in the complaint, however, that John Doe 4, a Deputy Warden of Security, or John Doe 5, a Captain of Security, Compl. ¶ 5, had any involvement at all with, or even knew of, Plaintiff's transport or the "keep separate profile[ ]" between Plaintiff

and Webster. Plaintiff's allegations against John Does 4 and 5 consist of entirely conclusory assertions contained within Plaintiff's claim for relief. *See id.* ¶ 24. Plaintiff does not otherwise mention these defendants in the statement of facts. "Conclusory allegations of personal involvement are insufficient." *Johnson v. Rowe*, No. 3:24-CV-617 (MPS), 2025 WL 1786083, at *6 (D. Conn. June 27, 2025). And to the extent that Plaintiff alleges these officials were personally involved by their failure to "rectify staff misconduct," Compl. ¶ 24, "section 1983 claimants can no longer rely on the theories of supervisory liability or failure to discipline to establish a supervisor's personal involvement in a constitutional violation" after *Tangreti*. *Kistner v. City of Buffalo*, No. 21-CV-526-LJV-JJM, 2023 WL 144915, at *15 (W.D.N.Y. Jan. 10, 2023) (citing *Tangreti*, 983 F.3d at 616).

Based on the forgoing, Plaintiff may pursue damages from John Does 1, 2, and 3 and Warden Jesus Guadarrama. Plaintiff's claims against John Does 4 and 5 are dismissed. 28 U.S.C. § 1915A(b).

    C. <u>Deliberate Indifference to Serious Medical Needs Claims</u>

Plaintiff next asserts a deliberate indifference to medical needs claim related to prison officials' failure to provide Plaintiff medical treatment for a back injury he sustained during the inmate assault and resulting involvement by correctional officers to break up the fight.

To state a Fourteenth Amendment claim for deliberate indifference to serious medical needs, a detainee first must show that his medical need was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023) (quoting *Farmer*, 511 U.S. at 834). "This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280. A "sufficiently serious"

deprivation can exist if the detainee suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Additionally, a medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) (internal citation omitted). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worth of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702–03 (2d Cir. 1998).

When the claim is based on a delay or interruption in treatment rather than a denial of treatment, "the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). It is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for [these] purposes." *Id.* (citing *Chance*, 143 F.3d at 702–03). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith*, 316 F.3d at 187.

The conduct of the defendants is considered objectively. "[A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a

9

substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (quoting *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (internal quotation marks omitted)). "Deliberate indifference requires, at a minimum, culpable recklessness, *i.e.*, an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Darby*, 14 F.4th at 128 (citation and internal quotation marks omitted); *see also Darnell*, 849 F.3d at 35 ("[T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."). Negligence is insufficient to satisfy this component. *See Darnell*, 849 F.3d at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently). However, courts frequently consider "the degree of risk associated with the negligent treatment," and have found reckless conduct, for instance, where the plaintiff did not receive treatment for a documented injury. *King v. Falco*, No. 16 CV 6315 (VB), 2018 WL 6510809, at *9 (S.D.N.Y. Dec. 11, 2018) (internal citation omitted and citing cases).

Here, Plaintiff alleges he experienced "severe back pains" after Webster assaulted him. Compl. ¶ 15. Courts in this circuit have disagreed as to whether back pain may be "sufficiently serious," in satisfaction of the objective prong. *Compare Faraday v. Lantz*, No. 3:03-CV-1520 (SRU), 2005 WL 3465846, at *5 (D. Conn. Dec. 12, 2005) (noting that "[t]here are numerous cases from this circuit and others finding various back conditions to be sufficiently serious to support an Eighth Amendment claim"), *with Salaam v. Adams*, No. 9:03-CV-0517 (LEK/GHL), 2006 WL 2827687, at *10 (N.D.N.Y. Sept. 29, 2006) (concluding that "an injury to [plaintiff's]

lower back, which caused intermittent back pain requiring pain relievers and physical therapy" was not sufficiently serious under Eighth Amendment); *see also Darnell*, 849 F.3d at 30 (objective element of deliberate indifference to serious medical needs claim is the same under the Eighth and Fourteenth Amendments). But even if the Court assumes that Plaintiff's "severe back pains" were sufficiently serious, he has alleged no facts suggesting that any named defendant was deliberately indifferent to Plaintiff's back pain.

Plaintiff brings this claim against only Medical Supervisor John Doe 6, who Plaintiff alleges was deliberately indifferent to his back pain by "failing to rectify medical staff's disregard to Plaintiff's medical needs after he requested medical multiple times while in the RHU for a severe injury and was completely ignored." Compl. ¶¶ 5, 25. But this conclusory allegation—the only one against John Doe 6 in the complaint—fails to establish that John Doe 6 even knew specifically of Plaintiff's back pain, let alone that he "knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *cf. Davis v. Supervisor*, No. 3:21-CV-00648 (SVN), 2022 WL 3681558, at *8 (D. Conn. Aug. 25, 2022) (concluding plaintiff had satisfied subjective component when dental director "knew about Plaintiff's cavity, provided him with other dental care, and denied his grievances requesting additional care for his painful cavity to be filled"). Accordingly, this claim must be dismissed against Defendant John Doe 6 for failure to state a claim under 28 U.S.C. § 1915A(b).

D. Request to Appoint Counsel

Plaintiff also requests appointment of counsel. *See* Compl. at 4. Because civil litigants do not have a constitutional right to the appointment of counsel, a court's decision to appoint *pro bono* counsel is discretionary. *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68–69 (2d Cir. 2011) ("A party has no constitutionally guaranteed right to the assistance of counsel

11

in a civil case." (citation omitted)); *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) ("Broad discretion lies with the district judge in deciding whether to appoint counsel[.]" (citation omitted)); 28 U.S.C. Sec. 1915(e)(1) (permitting district court to appoint *pro bono* counsel for indigent litigant). The Second Circuit has cautioned the district courts against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173-74 (2d Cir. 1989).

Before an appointment of *pro bono* counsel for an indigent litigant is considered, the indigent person must demonstrate that he tried, but was unable, to secure counsel. *Hodge*, 802 F.2d at 61. In addition, the district court must "determine whether the indigent's position seems likely to be of substance." *Id.*; *see also Cooper*, 877 F.2d at 171. If the claims are sufficiently meritorious, the court should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented, the movant's apparent ability to present the case, and the complexity of the legal issues involved. *See Hodge*, 802 F.2d at 61–62.

After an initial review of the complaint, the Court has determined that certain claims are not facially frivolous and should proceed to service of process. But this determination does not necessarily suggest that the claims are sufficiently meritorious to warrant appointment of *pro bono* counsel. Even if they were, Plaintiff has not stated that he tried, but was unable, to secure counsel. *Hodge*, 802 F.2d at 61.

The Court is mindful of the difficulties faced by parties when litigating an action without an attorney, particularly when that party is incarcerated. But the Court can only impose upon private attorneys to give their time and efforts without compensation in cases where the plaintiff has demonstrated that the claims have sufficient merit and that he has attempted to secure counsel

through his own efforts. The Court cannot conclude that Plaintiff has satisfied these requirements in this case. Accordingly, the Court denies Plaintiff's request for appointment of counsel without prejudice. Plaintiff may file a motion seeking appointment of counsel at a later stage of the litigation, if circumstances change and the above conditions are met.

## ORDERS

Based on the foregoing, the Court issues the following orders:

Plaintiff may proceed on his individual capacity claims against Defendants John Does 1, 2, and 3 and Warden Jesus Guadarrama based on Plaintiff's Fourteenth Amendment failure to protect claim.

The Court dismisses all other claims and terminates Defendants John Does 4, 5, and 6.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Defendants John Does 1, 2, and 3 and Jesus Guadarrama, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **January 28, 2026**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants named above in their individual capacities as described above.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **January 28, 2026**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants

named therein.  If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **January 28, 2026**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Doe Defendants.**  If Plaintiff opts to proceed with the claims that this initial review order allows to proceed, the Court advises Plaintiff that the Court cannot serve the complaint on John Does 1, 2, and 3 because Plaintiff has not provided the first or last names for these Defendants. Plaintiff will have ninety (90) days from the date of appearance of counsel of the first Defendant to appear in this action to file a notice identifying John Does 1, 2, and 3 by their first and last names.  Plaintiff may determine the identities of John Does 1, 2, and 3 by reviewing his materials and by sending a discovery request to counsel for any other Defendant, once such Defendant appears in this action.  Failure to identify these John Doe defendants by the above deadline will result in dismissal of all claims against these defendants.

**<u>Changes of Address</u>.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(d)1 provides that he **MUST** notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more

than one pending case, he should indicate all the case numbers in the notification of change of address.

**SO ORDERED** at Hartford, Connecticut, this 29th day of December, 2025.

                                         */s/ Sarala V. Nagala*
                                        SARALA V. NAGALA
                                        UNITED STATES DISTRICT JUDGE